1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD NELSON, et al.,

11             Plaintiffs,              No. CIV S-09-2776 EFB P

12        vs.

13   BUTTE COUNTY SHERIFF'S
     DEPARTMENT, et al.,
14                                      ORDER AND
               Defendants.             FINDINGS AND RECOMMENDATIONS
15   _____/

16        Plaintiffs are prisoners proceeding through counsel in an action brought under 42 U.S.C.

17   § 1983.  Presently before the court are four motions for summary judgment filed by defendants:

18   (1) motion for summary judgment against all plaintiffs filed by defendants Butte County

19   Sheriff's Department, Flicker, Deal, McNulty, Paley, Hovey, Morehead, Stockwell, Mell,

20   Bentley, Narvais, Demmers, Maffucci, and Jones (collectively referred to as "County

21   Defendants") (Dckt. No. 14); (2) motion for summary judgment against plaintiff Simpson filed

22   by defendant California Forensic Medical Group, Inc. ("CFMG") (Dckt. No. 10); (3) motion for

23   summary judgment against plaintiff Brewer filed by CFMG (Dckt. No. 17); and (4) motion for

24   ////

25   ////

26   ////

                                                1

1  summary judgment against plaintiff Nelson filed by CFMG (Dckt. No. 27).[1]  For the reasons set

2  forth below, the court recommends that: (1) County Defendants' motion for summary judgment

3  be granted in part and denied in part; (2) CFMG's motion for summary judgment against

4  Simpson be granted in part and denied in part; (3) CFMG's motion for summary judgment

5  against Brewer be granted; and (4) CFMG's motion for summary judgment against Nelson be

6  granted.

7  **I.      Background**

8          This action proceeds on the complaint filed by plaintiffs on October 6, 2009.  Dckt. No.

9  1.  In the complaint, plaintiffs allege that defendants violated their civil rights and various state

10  laws.  Each plaintiff has a distinct factual background on which their claims are predicated.  The

11  court will therefore discuss the facts pertaining to each plaintiff separately.  Unless otherwise

12  noted, the undersigned finds that the following facts are not disputed by the parties, or following

13  the court's review of the evidence submitted there is insufficient evidence to establish a genuine

14  dispute.[2]

15  **A.      Plaintiff Nelson**

16          On February 21, 2008, plaintiff Nelson was transferred from Tehama County Jail to Butte

17  County Jail ("BCJ").  Def. CFMG's Mot. for Summ. J. against Pl. Nelson, Stmt. of Undisputed

18  Facts in Supp. Thereof (Dckt. No. 27-2), UMF No. 1.  While at Tehama County Jail, Nelson was

19  prescribed Seroquel to treat his mental condition.  *Id.*, UMF No. 3.  He arrived at BCJ without

20  any prescription medication.  *Id.*, UMF Nos. 1-2.  BCJ has contracted with defendant CFMG to

21  provide all medical, psychological, and dental services to inmates housed at BCJ.  County Defs.'

22

23          [1] Defendants failed to properly notice their motions in accordance with Local Rule 230.
    Plaintiffs did not object, and the court deems the matters submitted for decision.

24          [2] Plaintiffs dispute numerous statements that defendants contend are undisputed.  *See
    generally* Dckt. Nos. 63, 65-67.  Although occasionally plaintiffs point to evidence to support their
25  contention that a fact is in dispute, plaintiffs often dispute defendants' facts without citing to
    evidence or cite to evidence that does not refute defendants' statements of fact.  For this reason, the
26  court has thoroughly reviewed the record to determine which facts are undisputed.

Stmt. of Undisputed Facts (Dckt. No. 16), UMF No. 73.  At BCJ Nelson was initially prescribed Elavil, but Seroquel was not continued.  *Id*., UMF No. 5; Nelson Decl. (Dckt. No. 37) ¶ 2.  On February 25, 2008, Nelson filed a grievance complaining that CFMG was not providing him his medication.  Dckt. No. 16, UMF No. 25.  CFMG responded to his grievance, informing him that he was being provided the medication he needed.  *Id*., UMF No. 26.  Nelson was evaluated by Dr. Baker, a physician employed by CFMG, on February 27, 2008.  Dckt. No. 27-2, UMF No. 8. It was conveyed to Dr. Baker that Nelson had used illicit drugs in the past and had previously used Seroquel without a prescription.  *Id*., UMF Nos. 9-10.  Based on Nelson's previous drug use, Dr. Baker prescribed Thorazine and Elavil.  *Id*., UMF No. 11.

On March 26, 2008, Nelson received a consult by a non-party physician, Dr. Uppal, at the Oroville Hospital.  *Id*., UMF No. 19.  Dr. Uppal ordered Nelson to cease taking Elavil and Thorazine and prescribed Zyprexa.  *Id*., UMF No. 21.  Dr. Uppal further instructed Nelson to follow up with the jail physician.  *Id*.  Upon Nelson's return to BCJ, Dr. Baker ordered Nelson to stop taking all medication pending further review.  *Id*., UMF No. 22.  Dr. Baker subsequently evaluated Nelson and concluded that he had anxiety relating to being in jail.  *Id*., UMF No. 23.

On April 23, 2008, Nelson filed a second grievance complaining that one of the medications he was taking, Ibuprofen, was causing him stomach problems.  Dckt. No. 16, UMF No. 27.  CFMG informed him that he needed to submit a sick slip and he would then be provided an antacid to take with his Ibuprofen.  *Id*., UMF No. 27.  Nelson filed another grievance on August 11, 2008, complaining that CFMG was not conducting blood tests as ordered by the emergency room doctor at Oroville Hospital.  *Id*., UMF No. 28.  On August 13, 2008, Nelson was transferred to Metropolitan State Hospital.  *Id*., UMF No. 29.  Nelson subsequently returned to BCJ, and on April 15, 2009, Dr. Baker prescribed him Bupropion, Gabapentin and Seroquel. Dckt No. 27-2, UMF No. 27.

////

////

### B.     Plaintiff Simpson

Plaintiff Simpson was arrested on August 21, 2008.  Dckt. No 16, UMF No. 32.

Defendant Paley, a Butte County Sheriff's Deputy, observed Simpson driving a black truck with

a female passenger.  *Id*., UMF No. 33.  Paley, knowing that Simpson was a parolee at large,

initiated a vehicle stop.  *Id*., UMF No. 34.  After Simpson failed to stop, Paley gave chase.  *Id*.,

UMF Nos. 34-35.  Simpson eventually stopped at a residence where he switched vehicles, but

his passenger remained with the black truck.  *Id*., UMF No. 35.  Paley stayed with the passenger

and other deputies continued to pursue Simpson.  *Id*., UMF Nos. 35-36.

Simpson eventually drove into a field where his vehicle became stuck.  *Id*., UMF No. 37.

Deal and other deputies approached Simpson's vehicle and witnessed Simpson attempting to get

the vehicle to drive.  *Id*.  Deal ordered Simpson out of the vehicle, but he refused.  *Id*., UMF No.

38.  Simpson claims he did not hear any request to exit the vehicle.  Simpson Decl. (Dckt. No.

46) ¶ 4.  Deal broke the driver's side window and struck Simpson multiple times with a baton on

the shoulder, neck, and head.[3]  *Id*. at ¶ 4.  Simpson was subsequently removed from the vehicle

and handcuffed.  Dckt. No. 16, UMF No. 41.

After his arrest, Simpson was taken to Orville Medical Center.  *Id*., UMF No. 42.  An

emergency room physician examined Simpson and cleared him for incarceration at BCJ.  Def.

CFMG's Mot. Summ. J. against Pl. Simpson, Stmt. of Undisputed Facts in Supp. Thereof (Dckt.

No. 10-2), UMF No. 2.  Simpson contends, however, that a head injury that he sustained during

his arrest was never examined.  Dckt. No. 46 ¶¶ 6, 7.  On October 13, 2008, while incarcerated at

BCJ, Simpson complained that his hand hurt.  Dckt. No. 10-2, UMF No. 3.  He also complained

that he had broken teeth and had lost a filling.  *Id*., UMF No. 5.  Simpson contends that these

---

[3] County Defendants claims that Simpson was resisting arrest and swinging his arms at Deal at the time he was struck.  Dckt. No. 16, UMF Nos. 39-41.  County Defendants also claim that deputies were unsure whether Simpson was reaching for a weapon and that Deal only struck plaintiff in the shoulder area.  *Id*., UMF Nos. 38, 40.  In Simpson's version of the incident, he was not resisting arrest and was struck multiple times in the neck and head.  Dckt. No 46 ¶ 4.

injuries were the result of his violent arrest.  Dckt. No. 46 ¶¶ 6, 8.   On October 21, 2008, CFMG

prescribed Simpson Ibuprofen for his pain.  Dckt. No. 10-2, UMF No. 4.  His Ibuprofen

prescription was renewed on October 21, 2008 and November 5, 2008.  *Id.*, UMF Nos. 6-7.

   Simpson was seen by CFMG's dental services on November 5, 2008, and an extraction

of a damaged tooth was recommended.  *Id.*, UMF No. 8.  Simpson did not wish to have the tooth

extracted; instead, Simpson wanted CFMG to repair his broken tooth and consequently no

extraction was performed.  Dckt. No. 46 ¶ 8.  Simpson continued to complain of teeth and neck

pain, and his Ibuprofen prescription was renewed on December 1, 2008.  Dckt. No. 10-2, UMF

No. 10.  On December 19, 2008, Simpson was transferred from BCJ to High Desert State Prison.

*Id.*, UMF No. 11.

### C.      Plaintiff Brewer

   On August 29, 2008, plaintiff Brewer was arrested and booked into BCJ.  Dckt. No. 16,

UMF Nos. 44-45.  Prior to his arrival at BCJ, Brewer was treated at the Enloe Medical Center

for various injuries, including a fractured heel requiring a cast.  Def. CFMG's Mot. Summ. J.

against Pl. Brewer, Stmt. of Undisputed Facts in Supp. Thereof (Dckt. No. 17-2), UMF Nos. 2,

5.  Brewer was told by doctors that he needed to return to Enloe to have surgery on his leg, and

he conveyed this information to CFMG.  Brewer Decl. (Dckt. No. 39) ¶ 4.

   When Brewer arrived at BCJ, he was provided a wheelchair and placed in a sobering cell.

Dckt. No. 16, UMF No. 45.  According to Brewer, defendants Morehead and Stockwell took his

wheelchair away, "laughing since [he] could not stand on [his] feet."[4]  Dckt. No. 39 ¶ 2.

   On September 3, 2008, CFMG ordered a follow up orthopedic appointment.  Dckt. No.

17-2, UMF No. 6.  An appointment at Enloe Orthopedic Clinic was scheduled for November 17,

2008.  *Id.*, UMF No. 11.  Brewer was not informed that an appointment had been scheduled, and

he did not attend an appointment at Enloe Orthopedic Center on November 17, 2008.  Dckt. No.

---

     [4] County Defendants claim Brewer's wheelchair was removed because he continually
rammed it into the door of the sobering cell.  Dckt. No. 16, UMF No. 46.

39 ¶ 7.  In December 2008, Brewer was seen by an orthopedist at Enloe.  Dckt. No. 17-2, UMF

No. 12.  X-rays showed that Brewer's fracture had not yet healed and that he required an

additional four weeks in his cast.  *Id*.  According to Brewer, his treating physician asked him

"why it took so long to come back" to Enloe and informed him that surgery that would have

enabled him to walk normally could no longer be performed.  Dckt. No. 39 ¶ 5.  Soon after this

evaluation, Brewer was transferred from BCJ to High Desert State Prison.  Dckt. No. 16, UMF

No. 51.

### D.     Plaintiff Canfield

Plaintiff Canfield was incarcerated at High Desert State Prison.  Canfield Decl. (Dckt.

No. 44) ¶ 2.  After being injured in an accident at the prison, he was transferred to BCJ.  *Id*.  In

addition to the injuries sustained in the accident, Simpson has a stoma in his stomach with an

ileostomy bag.  *Id*. at ¶¶ 8, 13.  When Canfield arrived at BCJ he was using crutches, but

correctional staff removed his crutches, leaving Canfield relatively immobile.  *Id*. at ¶ 2.  On

November 2, 2008, Canfield filed a grievance complaining that his crutches had not been

returned.  Dckt. No. 16, UMF No. 52.  Although the grievance form indicates that Canfield's

complaint was resolved at the first level of BCJ's grievance process, *id*, Canfield contends that

the matter was never resolved to his satisfaction.  Dckt. No. 44 ¶ 3.  On December 16, 2008,

Canfield filed a second grievance complaining that correctional staff had still not returned one of

his crutches.  Dckt. No. 16, UMF No. 53.

On November 17, 2008, defendants Narvais and Maffucci, both correctional officers at

BCJ, were involved in an altercation with Canfield.  *Id*., UMF Nos. 56-57.  At the time of the

altercation, Narvais was passing out food to inmates in a section of BCJ that was on lock down.

*Id*., UMF Nos. 55-56.  According to County Defendants, Canfield starting pushing past Narvais

while stating that he would not be locked down again.  Deems Decl. (Dckt. No. 28), Ex. D

(incident report completed by Narvais).  Maffucci assisted Narvais, and the two were able to take

Canfield to the ground.  *Id*.  Additional officers helped place Canfield in restraints.  *Id*.  Under

1   Canfield's version of the incident, he did not push or resist correctional officers, and Narvais and

2   Maffucci "smashed" him to the ground.  Dckt. No. 44 ¶ 4.  Canfield was also "roughly

3   handcuffed and dragged from the pod."  *Id*.

4          On November 23, 2008, the section of BCJ in which Canfield was housed was placed on

5   lock down in order for correctional officers to conduct a search of the suicide watch cells.  Dckt.

6   No. 16, UMF No. 61.  After the search was completed, a correctional officer informed Canfield

7   that he had ten minutes remaining on his dayroom time.  *Id*., UMF No. 62.  With his remaining

8   time, Canfield took a shower.  *Id*., UMF No. 63  After he showered, the correctional officer

9   informed him that he needed to return to lock down.  *Id*.  According to County Defendants,

10  Canfield refused to return to his cell and the correctional officer requested assistance. *Id*., UMF

11  Nos. 64-65.  Defendants Bentley, Demmers, Mell and another correctional officer arrived at the

12  scene and ordered Canfield to return to his cell.  *Id*., UMF Nos. 65-66.  County Defendants

13  contend that Canfield refused, and the officers subsequently took Canfield to the ground and

14  placed him in restraints.  *Id*.  In Canfield's version of the incident, he merely complained that he

15  was only provided a few minutes out of his cell.  Dckt. No. 44 ¶¶ 5, 23, 26.  The officers then

16  purportedly beat him, choked him, and threatened to kill him.  *Id*. at ¶ 23.  And while plaintiff

17  was already on his stomach, Bentley purportedly hit Canfield with a closed fist.  *Id*. at ¶ 27.

18         On January 6, 2006, Canfield was involved in a confrontation with defendant Flicker.

19  Dckt. No. 16, UMF No. 68.  According to County Defendants, Flicker met with Canfield to

20  discuss an administrative grievance Canfield had previously filed.  Flicker Decl. (Dckt. No. 18) ¶

21  29.  Canfield had been using Flicker's pen and Flicker requested that his pen be returned.  *Id*.

22  Canfield refused and Flicker again ordered Canfield to give him the pen.  *Id*.  After another

23  refusal, Flicker reached for the pen, but Canfield "raised his hand with the pen and took a bladed

24  stance."  *Id*.  Flicker then struck Canfield in the chest and subdued Canfield until assistance

25  arrived.  *Id*.

26  ////

1     In Canfield's version of the altercation, Canfield did not refuse to return the pen nor take

2  an "aggressive step toward Lt. Flicker." Dckt. No. 44 ¶ 12.  Although Canfield was not fighting

3  or resisting, Flicker sat on him, crushing his ribs.  *Id.*

4  **II.    Summary Judgment Standard**

5     Summary judgment is appropriate when there is "no genuine dispute as to any material

6  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

7  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

8  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

9  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

10  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

11  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

12  motion asks whether the evidence presents a sufficient disagreement to require submission to a

13  jury.

14     The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

15  or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

16  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

17  trial.'"  *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

18  1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the

19  initial responsibility of presenting the basis for its motion and identifying those portions of the

20  record, together with affidavits, if any, that it believes demonstrate the absence of a genuine

21  issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

22  Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the

23  burden then shifts to the opposing party to present specific facts that show there is a genuine

24  issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67

25  F.3d 816, 819 (9th Cir. 1995).

26  ////

1        A clear focus on where the burden of proof lies as to the factual issue in question is

2   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

3   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

4   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

5   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

6   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

7   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

8   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

9   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

10   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

11   should be entered, after adequate time for discovery and upon motion, against a party who fails

12   to make a showing sufficient to establish the existence of an element essential to that party's

13   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

14   circumstance, summary judgment must be granted, "so long as whatever is before the district

15   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

16   satisfied."  *Id.* at 323.

17        To defeat summary judgment the opposing party must establish a genuine dispute as to a

18   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

19   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

20   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

21   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

22   material is determined by the substantive law.  *Id.*  If the opposing party is unable to produce

23   evidence sufficient to establish a required element of its claim that party fails in opposing

24   summary judgment.  "[A] complete failure of proof concerning an essential element of the

25   nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at

26   322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

1   issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

2   dispute over an issue that is determinative of the outcome of the case.

3   **III.    Discussion**

4           **A.      County Defendants' Motion for Summary Judgment**

5           Plaintiffs assert both federal constitutional claims and state law claims against County

6   Defendants.  County Defendants move for summary judgment on all of plaintiffs' claims.

7                   **I.       Plaintiff Nelson's Claim Against County Defendants**

8           Plaintiff Nelson alleges that County Defendants violated his civil rights by subjecting

9   him to extensive abuse and harassment in retaliation for filing grievances.  Dckt. No. 1 at 4.

10  County Defendants argue that this claim is barred because plaintiff Nelson failed to exhaust

11  available administrative remedies.  Dckt. No. 32 at 10-11.

12          Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought

13  with respect to prison conditions [under section 1983 of this title], or any other federal law, by a

14  prisoner confined in any jail, prison, or other correctional facility until such administrative

15  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to

16  the exhaustion requirement have been defined broadly as "the effects of actions by government

17  officials on the lives of persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v.*

18  *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d

19  Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the

20  claims the plaintiff has included in the complaint, but need only provide the level of detail

21  required by the grievance system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*

22  *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials

23  "time and opportunity to address complaints internally before allowing the initiation of a federal

24  case").

25          The Butte County Sheriff's Department has a three-level review process for inmate

26  grievances.  Flicker Decl. (Dckt. No. 18) ¶ 4.  Prison officials first attempt to resolve the

grievance informally.  Flicker Decl., Ex. A at 16.  If the complaint cannot be resolved

informally, it is submitted to the Team Sergeant at the first level.  *Id*.  A grievance that cannot be

resolved to the inmate's satisfaction at the first level advances to the second level, where it is

reviewed by the Correctional Lieutenant.  *Id*. at 17.  If unresolved at the second level, an inmate

may appeal his grievance to the Jail Commander.  *Id*.  Grievance forms that have completed all

three levels will contain the signatures of the Team Sergeant in block one, the Correctional

Lieutenant in block two, and the Jail Commander in block three.  Dckt. No. 18 ¶ 2.

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731,

741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be

"available," there must be the "possibility of some relief. . . ."  *Booth*, 532 U.S. at 738.  Relying

on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has
> received all "available" remedies at an intermediate level of review or has been
> reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Defendants bear the burden of proving plaintiff's failure to exhaust.  *Wyatt*, 315 F.3d at

1119.  To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at
> unexhausted levels of the grievance process or through awaiting the results of the
> relief already granted as a result of that process. Relevant evidence in so
> demonstrating would include statutes, regulations, and other official directives
> that explain the scope of the administrative review process; documentary or
> testimonial evidence from prison officials who administer the review process; and
> information provided to the prisoner concerning the operation of the grievance
> procedure in this case . . . . With regard to the latter category of evidence,
> information provided [to] the prisoner is pertinent because it informs our
> determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

In support of their argument that Nelson failed to exhaust available administrative

remedies, County Defendants submit the declaration of Flicker.  Dckt. No. 18.  Flicker declares

1    that he is authorized to verify all records maintained by BCJ and that he has reviewed the

2    complete BCJ file for Nelson. *Id*. at ¶¶ 2, 9.  He further states that Nelson did not file a

3    grievance regarding his claim that he was abused and harassed by correctional officers in

4    retaliation for submitting grievances. *Id*. at ¶ 15.  Nelson does not dispute that he never filed a

5    grievance relating to his retaliation claim. Nelson Decl. (Dckt. No. 37) ¶ 17.  Nelson, however,

6    claims he failed to report abuse by correctional staff because he had witnessed other inmates

7    being mistreated in retaliation for complaining.

8         The Court of Appeals for the Ninth Circuit has held that an inmate's failure to exhaust

9    under the PLRA may be excused where "circumstances render administrative remedies

10   effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).  In *Nunez*, the

11   court held that the plaintiff was excused from exhausting administrative remedies where the

12   inmate took reasonable steps to exhaust his claim, but was precluded from exhausting his

13   administrative remedies because of a mistake made by the warden. *Id.* at 1224.  The court

14   concluded that the warden's mistake rendered the plaintiff's administrative remedies effectively

15   unavailable. *Id.* at 1226.

16        The Ninth Circuit also excused an inmate's failure to exhaust administrative remedies in

17   *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir.2010).  In that case the court held that improper

18   screening of inmates' grievances renders administrative remedies effectively unavailable,

19   thereby excusing inmates from complying with the PLRA's exhaustion requirement. *Id.* at 823.

20        In both opinions, the Ninth Circuit noted that other circuits have also held that inmates

21   are not required to satisfy the exhaustion requirement when administrative remedies are

22   effectively unavailable. *Nunez*, 591 F.3d at 1224; *Sapp*, 623 F.3d at 822.  Noteworthy to the

23   present matter, the Ninth Circuit observed that other circuits have found administrative remedies

24   effectively unavailable where prison officials threatened inmates. *Nunez*, 591 F.3d at 1224;

25   *Sapp*, 623 F.3d at 823; *See Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *Macias v.

26   Zenk*, 495 F.3d 37, 45 (2d Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006).

1    Nelson declares that he did not file a grievance or otherwise report abuse by correctional

2    staff because he had witnessed prison officials retaliating against other inmates for complaining.

3    Dckt. No. 37 ¶ 17.  However, the fact that Nelson witnessed correctional staff abuse other

4    inmates does not show that the grievance process was effectively unavailable.  It is undisputed

5    that Nelson submitted three different grievances while incarcerated at BCJ.  Plaintiffs' Response

6    to County Defs.' Stmt. of Undisputed Facts (Dckt. No. 63), UMF Nos. 25, 27, 28.  Clearly

7    Nelson was not deterred from using the grievance process at BCJ notwithstanding his assertion

8    that he had witnessed correctional staff abusing other inmates for complaining.  Contrary to

9    Nelson's contention, the evidence establishes that he had access to BCJ's grievance process and

10    had utilized the process on other occasions.

11    In sum, Nelson did not properly exhaust his administrative remedies.  His failure to

12    exhaust was not excused, as administrative remedies remained available.  Accordingly, Nelson's

13    claim that he was subjected to extensive abuse and harassment for complaining should be

14    dismissed without prejudice.[5]

15    **ii.    Plaintiff Simpson's Claims Against County Defendants**

16    Plaintiff Simpson has four claims that he independently alleges against specific County

17    Defendants, which include: 1) excessive force by defendants Deal, McNulty and Paley; 2)

18    assault and battery by defendants Deal, McNulty and Paley; 3) violations of California Civil

19    Code § 52.1 (Bane Act) by defendants McNulty and Paley; and 4) intentional infliction of

20    emotional distress by defendants Deal, McNulty, and Paley.[6]

21

22    [5] County Defendants also argue that Nelson has failed to show that they were deliberately
indifferent to his serious medical needs.  The complaint, however, does not contain a cause of action
23    for deliberate indifference to a serious medical need brought by Nelson against County Defendants.
The undersigned, therefore, need not address this argument.
24
25    [6] In Simpson's facts section of the complaint, it is alleged that he did not receive medical
treatment for his injuries upon arrival at BCJ.  Dckt. No. 1 ¶ 19.  County Defendants argue, likely
out of an abundance of caution, that Simpson did not file a grievance complaining that BCJ failed
26    to provide him medical treatment, and therefore his claim was not properly exhausted.  Dckt. No.

14

1                    a.    **Excessive Force**

2          Plaintiff Simpson claims that his civil rights were violated by defendants Deal, McNulty,

3    and Paley because they used excessive force in the course of arresting him.[7]  Claims that law

4    enforcement officers used excessive force in performing an arrest are analyzed under the Fourth

5    Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Under

6    this standard a court must decide "whether the officers' actions are 'objectively reasonable' in

7    light of the facts and circumstances confronting them."  *Id.* at 397.  This determination "requires

8    a careful balancing of the nature and quality of the intrusion on the individual's Fourth

9    Amendment interests against the countervailing governmental interest at stake."  *Id.* at 396-97

10   (internal quotation marks omitted).  The reasonableness of an officer's conduct "must be judged

11   from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of

12   hindsight."  *Id.* at 396.

13         The reasonableness determination involves a three step analysis.  First, a court "must

14   assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating

15   the type and amount of force inflicted."  *Glenn v. Washington County*, — F.3d —, 2011 WL

16   6760348, at *5 (9th Cir. Dec. 27, 2011) (internal quotation marks omitted).  Second, a court

17   evaluates the government's interest in using force.  *Id.*  This requires "assessing (1) the severity

18   of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's

19   safety; and (3) whether the suspect was resisting arrest or attempting to escape."  *Espinosa v.*

20   _____

21   32 at 12.  The undersigned agrees with County Defendants that the complaint is difficult to decipher.
     Several readings of the complaint reveal that Simpson does not allege that County Defendants were
     deliberately indifferent to his serious medical needs.  Simpson's claims relating to his medical

22   treatment are asserted against CFMG, not County Defendants.

23         [7] In the complaint, it is alleged that defendants Deal, McNulty, and Paley used excessive
     force and inflicted cruel and unusual punishment in violation of the Eighth Amendment.  Dckt. No.

24   1 ¶ 46.  The facts forming the basis for this claim surround the circumstances of Simpson's arrest.
     As discussed herein, claims that an officer used excessive force in the course of making an arrest

25   are analyzed under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 395 (1989), not the
     Eighth Amendment.  This court construes Simpson's claim against defendants Deal, McNulty, and

26   Paley as an excessive force claim in violation of the Fourth Amendment.

1    *City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).  Finally, the gravity of the

2    intrusion must be balanced against the government's need for the intrusion.  *Glenn*, 2011 WL

3    6760348, at *5.  "Because the excessive force inquiry nearly always requires a jury to sift

4    through disputed factual contentions, and to draw inferences therefrom . . . summary judgment

5    . . . in excessive force cases should be granted sparingly."  *Id.*

6         Viewing the evidence in the light most favorable to Simpson, a reasonable jury could find

7    that excessive force was used in the course of his arrest.  Though indisputable that Simpson ran

8    from deputies, Dckt. No. 63, UMF No. 33, Simpson's evidence shows that he was not fleeing at

9    the time he was beaten by deputies.  Dckt. No. 46 ¶ 4.  Rather, it shows that after Simpson's

10   vehicle was stopped, Deal broke the driver's side window of the vehicle and that Simpson's

11   reaction was to shield his face from the glass.  *Id.*  According to Simpson, he was frozen in fear

12   and did not threaten the officers or further resist any attempt to arrest him.  *Id.*  Simpson declares

13   that Deal stated that he was glad Simpson ran because he had "just got these new batons and

14   want[ed] to try them out."  *Id.*  Simpson further declares that Deal then struck him with a baton

15   numerous times in the shoulder, head and neck.  *Id.* at ¶¶ 4-6.  Simpson submits evidence that as

16   a result of this beating, he sustained broken teeth and suffered memory loss, inability to

17   concentrate, headaches and difficulty sleeping.  *Id.* at ¶¶ 8, 10.

18        This evidence is sufficient to create a genuine dispute as to whether Deal used excessive

19   force against Simpson.  A rational trier of fact could conclude from Simpson's evidence that

20   Simpson did not threaten deputies or further resist arrest, and that once Simpson's vehicle was

21   stopped, he posed, at most, a minimal threat to public and officer safety.  Under these

22   circumstances, a jury could find that multiple baton strikes to the shoulder, head, and neck were

23   unnecessary to arrest Simpson.  Accordingly, summary judgment must be denied on this claim.

24        There is no evidence, however, that McNulty and Paley used excessive force in

25   apprehending Simpson.  Simpson concedes that Paley was not present at the time of his arrest.

26   *Id.* at ¶ 2.  As for McNulty, there is no evidence he used excessive force or was even present at

1    the scene when Simpson was arrested.[8]  Simpson has failed to establish a triable issue that

2    McNulty and Paley used excessive force.  Thus, McNulty and Paley are entitled to summary

3    judgment on this claim.

4                    **b.**        <u>**Assault and Battery Claims**</u>

5           Plaintiff Simpson's cause of action for assault and battery against defendants Deal,

6    McNulty and Paley is predicated on the events surrounding his arrest on August 21, 2008.

7    County Defendants argue that Deal is entitled to summary judgment because the force utilized in

8    making the arrest was reasonable.  Dckt. No. 32 at 14.  County Defendants contend that McNulty

9    and Paley are entitled to judgment as a matter of law on this claim because there is no evidence

10   that they were present when plaintiff was arrested.  County Defs.' Reply to Pls.' Opp'n (Dckt.

11   No. 69) at 4.

12          Under California law, battery is defined as the "willful and unlawful use of force or

13   violence upon the person of another." Cal. Penal Code § 242.  To succeed on a civil claim for

14   battery, the plaintiff must establish: "(1) defendant intentionally performed an act that resulted in

15   a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the

16   contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to

17   plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (2009).  However, when a

18   battery claim is brought against a police officer, plaintiff must show that the defendant officer

19   used excessive force in effecting the arrest.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269,

20   1273 (1998).  The determination of whether excessive force was used is analyzed under the

21   Fourth Amendment reasonableness standard.  *Munoz v. City of Union City*, 120 Cal. App. 4th

22   1077, 1102 (2004).

23   ////

24

25   _____

         [8] In his opposition to County Defendants' motion for summary judgment, Simpson contends
     that McNulty was present at the scene.  Dckt. No. 56 at 3-4.  Simpson cites his declaration as
     evidence supporting his argument.  However, in his declaration Simpson makes no mention of

26   McNulty being present at the scene during his arrest.

1    As discussed above, there exists a genuine issue as to whether the force used by Deal was

2    excessive under the circumstances.  Summary judgment in Deal's favor is not appropriate.

3    As for McNulty and Paley, Simpson has failed to show that these defendants used any

4    level of force against him or were even present during his arrest.   Thus, McNulty and Paley are

5    entitled to summary judgment on Simpson's assault and battery claim.

6              **c.**          **Violation of California's Bane Act by Defendants McNulty and**
                                **Paley**
7

8    Plaintiff Simpson claims that defendants McNulty and Paley violated California's Bane

9    Act, California Civil Code § 52.1, by using unnecessary and excessive force in the course of

10   arresting him.  California Civil Code § 52.1 provides a right of action for individuals whose

11   rights secured by the United States and California Constitutions have been interfered with by

12   another.  Cal. Civ. Code §  52.1(b).  "Section 52.1 does not provide any substantive protections;

13   instead, it enables individuals to sue for damages as a result of constitutional violations."

14   *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170-71 (9th Cir.1996), *aff'd in part and rev'd*

15   *in part on other grounds in Acri v. Varian Assocs.*, 114 F.3d 999 (9th Cir. 1997).  As discussed,

16   there is no evidence that Paley or McNulty violated Simpson's constitutional rights.

17   Accordingly, Paley and McNulty are entitled to summary judgment on this claim.

18             **d.**          **Intentional Infliction of Emotional Distress**

19   Plaintiff Simpson also alleges that the conduct of defendants Deal, McNulty and Paley

20   constituted intentional infliction of emotional distress.  Dckt. No. 1 at 14-15.  "In order to

21   establish a claim for intentional infliction of emotional distress under California law, [a plaintiff

22   is] required to show (1) that the defendant's conduct was outrageous, (2) that the defendant

23   intended to cause or recklessly disregarded the probability of causing emotional distress, and (3)

24   that the plaintiff's severe emotional suffering was (4) actually and proximately caused by

25   defendant's conduct."  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).  "Only conduct

26   exceeding all bounds usually tolerated by a decent society, of a nature which is especially

1  calculated to cause, and does cause, mental distress is actionable." *Brooks v. United States*, 29 F.

2  Supp.2d 613, 617-18 (N.D. Cal. 1998) (internal quotation marks omitted).

3          County Defendants argue that Simpson has not been able to show that the force used in

4  the course of the arrest was unreasonable and, therefore has failed to show that Deal's conduct

5  was outrageous.  Dckt. No. 32 at 15.  County Defendants further argue that Simpson has not

6  shown that he suffered emotional distress as a result of the arrest.  *Id*.  Simpson declares that

7  Deal stated that he was pleased that Simpson ran because he wanted to use his new baton.  Dckt.

8  No. 46 ¶ 4.  After this statement, Simpson claims Deal struck him multiple times with a baton.

9  *Id*. at ¶¶ 4-6.  This evidence is sufficient to create a genuine dispute as to whether Deal's conduct

10  was outrageous.

11          The argument that there is no evidence that Simpson suffered emotion distress is also

12  without merit.  Simpson declares that as a result of the beating he has "an inability to

13  concentrate, headaches, difficulty sleeping, and a great deal of fear."  *Id*. at ¶ 10.  This evidence

14  creates a triable issue as to whether Simpson suffers from emotional distress as a result of his

15  arrest.  Deal is not entitled to summary judgment on Simpson's emotional distress claim.

16          There is no evidence, however, that defendants McNulty and Paley engaged in

17  outrageous conduct or were the proximate cause of Simpson's emotional distress.  Thus,

18  McNulty and Paley are entitled to summary judgment.

19          **iii.    Plaintiff Brewer's Claims Against County Defendants**

20          Plaintiff Brewer claims that defendants Stockwell, Morehead, Flicker, and Hovey

21  violated his civil rights.

22          **a.    Plaintiff Brewer's Claims Against Defendants Stockwell and Morehead**

23

24          Plaintiff Brewer contends that defendants Morehead and Stockwell were deliberately

25  indifferent to his serious medical need by depriving him the use of his wheelchair.  Dckt. No. 1

26  ¶ 29.  County Defendants argue that Brewer cannot properly bring this claim because he failed to

1    exhaust his administrative remedies.  In support of their argument, County Defendants submit

2    the declaration of Flicker.  Dckt. No. 18.  Flicker declares that he is authorized to verify records

3    maintained by BCJ with regard to inmates in custody.  *Id*. at ¶ 2.  He further states that he has

4    reviewed the complete BCJ file for Brewer and that Brewer did not filed a grievance regarding

5    the removal of his wheelchair.  *Id*. at ¶¶ 18, 21.

6          Brewer does not dispute that he failed to submit a grievance regarding this incident.

7    Dckt. No. 63, UMF No. 48.  Brewer contends, however, that "he did complain on later

8    occasions."  *Id*.  The PLRA requires proper exhaustion.  *Booth*, 532 U.S. at 741.  "Proper

9    exhaustion demands compliance with an agency's deadlines and other critical procedural

10   rules[.]"  *Woodford*, 548 U.S. at 90.  Complaining generally about the removal of his wheelchair

11   was not sufficient to properly exhaust his available administrative remedies.  Brewer was

12   required to file a grievance seeking relief.  He did not follow BCJ's grievance procedure and

13   therefore failed to exhaust his available administrative remedies.  Accordingly, Brewer's claim

14   that Morehead and Stockwell were deliberately indifferent to his serious medical need is

15   dismissed without prejudice.

16          **b.    Plaintiff Brewer's Claim Against Defendant Flicker for**
             **Deliberate Indifference**

17

18          Plaintiff Brewer claims defendant Flicker was deliberately indifferent to his serious

19   medical need by failing to refer him to a hand specialist.  Dckt. No. 1 ¶¶ 22, 30.  Brewer

20   specifically claims that Flicker told him that he would have to wait until he was released to

21   receive medical treatment.  *Id*. at ¶ 30.  County Defendants contend that Flicker is entitled to

22   summary judgment because: (1) there is no evidence that Flicker acted with deliberate

23   indifference, and (2) Brewer failed to exhaust his administrative remedies.  As the court finds

24   that there is insufficient evidence to support a claim against Flicker for deliberate indifference,

25   the court does not reach County Defendants' exhaustion argument.

26   ////

                                                  20

1       A prison official violates the Eighth Amendment's proscription of cruel and unusual

2   punishment where he or she deprives a prisoner of the minimal civilized measure of life's

3   necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834

4   (1994).  To prevail, plaintiff must show both that his medical needs were objectively serious, and

5   that defendant possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294,

6   297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical

7   need is one that significantly affects an individual's daily activities, an injury or condition a

8   reasonable doctor or patient would find worthy of comment or treatment, or the existence of

9   chronic and substantial pain.  *See, e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.

10  1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997)

11  (*en banc*).

12      Deliberate indifference may be shown by the denial, delay or intentional interference with

13  medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*,

14  838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both

15  be aware of facts from which the inference could be drawn that a substantial risk of serious harm

16  exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus,

17  a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and

18  disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t is enough

19  that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

20  *Id.* at 842.

21      Brewer's evidence does not support his allegations that Flicker refused to refer him to a

22  hand specialist or that Flicker told him that he would have to wait until he was released from BCJ

23  before he could obtain medical attention.  Brewer declares that he filed a grievance on October

24  25, 2008, regarding his hand injury, and that Flicker responded to his grievance by telling him

25  that he needed to submit a sick slip.  Dckt. No. 39 ¶¶ 13, 14.  Brewer contends, however, that he

26  had already submitted a sick slip.  *Id.* at ¶ 14.  This evidence is insufficient to support a finding

1   that Flicker acted with deliberate indifference.  There is no indication that Flicker had any

2   knowledge that Brewer had previously submitted a sick slip or that instructing Brewer to submit a

3   sick slip would somehow interfere with him receiving medical attention.  Brewer's declaration

4   simply shows that Flicker informed Brewer of the procedure for obtaining medical care, not that

5   Flicker disregarded a serious risk to Brewer's health.  As there is no genuine issue as to whether

6   Flicker acted with deliberate indifference to Brewer's serious medical need, County Defendants

7   are entitled to summary judgment on this claim.

8                           **c.      Plaintiff Brewer's Claim Against Defendant Hovey**

9        Plaintiff Brewer alleges that defendant Hovey violated his civil rights by tricking him into

10   checking a box on a grievance form that indicated he was satisfied with a response to his

11   grievance.

12        It is undisputed that on October 29, 2008, Brewer filed a grievance regarding medical

13   treatment of his hand and that CFMG provided a detailed response to this grievance.  Dckt. No.

14   16, UMF No. 50.  The box on the grievance form indicated that Brewer was satisfied with the

15   response.  Dckt. No. 18-6 at 1.  However, Brewer declares that "I was trying to check the box on

16   the grievance form to show the grievance had not been satisfied, and Sgt. Hovey directed me to

17   sign in the wrong place, and he then took it away from me."  Dckt. No. 39 ¶ 14.

18        County Defendants argue Hovey is entitled to summary judgment because Brewer has

19   failed to alleged that Hovey deprived him of a constitutional right.  Dckt. No. 32 at 16.  In

20   opposition, Brewer argues that the constitutional violation is not simply tricking Brewer into

21   checking the wrong box on a grievance form.  Dckt. No. 54 at 4.  The violation includes the effect

22   Hovey's alleged chicanery had on Brewer receiving prompt medical care.  *Id.  See Jackson v.*

23   *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("Prison officials are deliberately indifferent to a

24   prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical

25   treatment.").

26   *////*

1    The allegations in the complaint relate only to Hovey's alleged involvement in Brewer's

2    completion of a grievance form, and hardly give County Defendants adequate notice of the

3    deliberate indifference claim Brewer now claims to assert against Hovey.  *See* Dckt. No. 1 ¶¶ 23,

4    30.  Regardless, Brewer does not produce any evidence that Hovey acted with deliberate

5    indifference.  There is no evidence that Hovey intentionally directed Brewer to sign his grievance

6    form in the wrong place or did so knowing he was subjecting Brewer to a substantial risk of

7    serious harm.  Because Brewer has failed to produce any evidence that Hovey acted with

8    deliberate indifference, County Defendants are entitled to summary judgment on this claim.

9                    **iv.    Plaintiff Canfield's Claims Against County Defendants**

10    Plaintiff Canfield claims that County Defendants are liable for violating his federally

11    protected constitutional rights and various state laws.  His claims include: (1) deliberate

12    indifference to his serious medical needs by County Defendants; (2) violation of his constitutional

13    rights by defendant Flicker; (3) violation of California's Bane Act by defendant Flicker; (4)

14    assault and battery by defendant Flicker; (5) violation of California's Bane Act by defendants

15    Demmers, Narvais, Maffucci, Mell, and Bentley; (6) assault and battery by defendants Narvais

16    and Maffucci; (7) assault and battery by Mell and Bentley; (8) assault and battery by Demmers;

17    and (9) assault and battery by unidentified officers.

18                          **a.    Claim for Taking Crutches**

19    Plaintiff Canfield claims that his civil rights were violated because BCJ staff took his

20    crutches away from him when he arrived at BCJ.  Dckt. No. 1 ¶¶ 24, 26, 28.  County Defendants

21    argue that Canfield cannot properly bring this claim before this court because he failed to exhaust

22    his administrative remedies.  Dckt. No. 32 at 16-17.

23    When Canfield arrived at BCJ, correctional staff took away his crutches.  Dckt. No. 44 ¶

24    2. County Defendants' evidence shows that Canfield filed two grievances requesting that he be

25    provided his crutches.  Dckt. No. 18, Exs. G, H.  Canfield's grievance forms indicate that both of

26    his grievances were resolved to his satisfaction at the first level of review.  *Id.*  Also, the response

23

1   to Canfield's second grievance specifically states that both of Canfield's crutches were returned

2   to him. Dckt. No. 18, Ex. H at 2. According to County Defendants, Canfield failed to exhaust his

3   administrative remedies because he did not appeal either complaint to the second and third levels

4   of review. Dckt. No. 32 at 17.

5          To satisfy the PLRA's exhaustion requirement, an inmate is not always required to appeal

6   his grievance through all levels of review. *See Brown*, 422 F.3d at 940 (an inmate need not

7   exhaust further levels of review upon receiving all available remedies at an intermediate level of

8   review). In *Harvey v. Jordan*, 605 F.3d 681 (9th Cir. 2010), the plaintiff filed a grievance

9   requesting that he be provided either a hearing and certain videotape evidence, or that prison

10  officials dismiss a disciplinary charge. Prison officials partially granted his grievance and

11  informed him that he would be provided a hearing and access to the requested videotape. *Id*. at

12  683. The plaintiff was satisfied with this response and did not appeal the decision. *Id*. at 685.

13  After five months without receiving the requested relief, the plaintiff used an appeal form to

14  complain that he was never provided the relief promised. *Id.* Prison officials construed his

15  complaint as an appeal of the decision granting him a hearing, and rejected it as untimely. *Id*.

16  The plaintiff subsequently filed suit and defendants moved to dismiss for failure to exhaust

17  administrative remedies. *Id*. at 683.

18         The Court of Appeals for the Ninth Circuit held that the plaintiff had "exhausted the

19  administrative process when the prison officials purported to grant relief that resolved his . . .

20  grievance to his satisfaction." *Id*. at 686. The court explained:

21             An inmate has no obligation to appeal from a grant of relief, or a partial
               grant that satisfies him, in order to exhaust his administrative remedies.
22             Nor is it the prisoner's responsibility to ensure that prison officials
               actually provide the relief that they have promised. *See Abney v.*
23             *McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not
               received promised relief is not required to file a new grievance where
24             doing so may result in a never-ending cycle of exhaustion.").

25

26

1    . . . Once the prison officials purported to grant relief with which [the
     inmate] was satisfied, his exhaustion obligation ended.  His complaint had
2    been resolved, or so he was led to believe, and he was not required to
     appeal the favorable decision.
3

4    *Id.* at 685.

5         The two grievance forms that Canfield submitted both indicate that Canfield received a

6    favorable determination at the first level of review.  Dckt. No. 18, Exs. G, H.  Whether or not

7    Canfield actually received his crutches is immaterial.  Once he received a grant of relief that

8    satisfied him, Canfield was not required to seek further administrative relief.  County Defendants'

9    evidence, rather than showing that Canfield failed to exhaust available administrative remedies,

10   establishes that Canfield satisfied his exhaustion obligation.  Accordingly, this claim should not

11   be dismissed.

12             **b.    Violation of Civil Rights by Defendant Flicker**

13        Plaintiff Canfield alleges that Flicker violated his Eighth Amendment right to be free from

14   cruel and unusual punishment by abusing and battering him for complaining about mistreatment.

15   Dckt. No. 1 ¶ 48.  County Defendants argue that there is no evidence that Flicker applied force

16   maliciously or sadistically.  Dckt. No. 32 at 18.

17        "[W]henever prison officials stand accused of using excessive physical force in violation

18   of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

19   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

20   cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  While malicious and sadistic uses of

21   force always violate contemporary standards of decency, not every "malevolent touch" by a

22   prison guard is actionable as an Eighth Amendment violation.  *Id.* at 9.  "The Eighth

23   Amendment's prohibition of cruel and unusual punishment necessarily excludes from

24   constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

25   of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (internal quotation marks and

26   citations omitted).  The following factors are relevant to a determination of whether a use of force

                                          25

violated the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

On January 6, 2006, Flicker met with Canfield to discuss an administrative grievance that Canfield had filed. Dckt. No. 18 ¶ 29. Flicker declares that Canfield had been using his pen and refused to return it. *Id*. Flicker further states that he reached for his pen, but Canfield "raised his hand with the pen and took a bladed stance." *Id*. Although Canfield does not specifically refute Flicker's statement that he raised the pen, Canfield does declare that he did not take any aggressive steps towards Flicker, nor did he hit or scratch Flicker. Dckt. No. 44 ¶ 12. Canfield also states in his declaration that "Flicker punched me at least ten times, some on my stoma. After that blood was pouring out and into my bag." *Id.* at ¶ 13. This evidence is sufficient to support a finding that Flicker's use of force was excessive in relation to its need. Although Canfield may have posed some level of threat to Flicker, a reasonable jury could conclude that punching Canfield more than ten times was an unnecessary response to Canfield's conduct. Moreover, Canfield's statement that he was bleeding from his stoma supports a finding that he sustained a serious injury. Canfield's evidence is sufficient to create a genuine dispute as to whether Flicker applied force maliciously and sadistically for the very purpose of causing harm, and therefore summary judgment on this claim is inappropriate.

### c.   <u>Violation of Bane Act by Defendant Flicker</u>

Canfield also claims that Flicker violated California's Bane Act. Dckt. No. 1 ¶ 52. This claim is predicated on the January 6, 2009 altercation that forms the basis for Canfield's Eighth Amendment claim against Flicker. County Defendants argue that Flicker is entitled to summary judgment on Canfield's Bane Act claim because there is no evidence that he used excessive force. As discussed above, there is sufficient evidence for a jury to find that Flicker violated the Eighth

Amendment.  Summary adjudication on this claim should be denied.

          **d.**        **Assault and Battery Claim Against Defendant Flicker**

County Defendants argue that defendant Flicker is entitled to summary judgment on plaintiff Canfield's assault and battery claim because there is no evidence that Flicker used unreasonable force during the January 6, 2009 altercation.  As already discussed, there remains a triable issue as to whether Flicker applied force maliciously and sadistically for the very purpose of causing Canfield harm.  The same evidence supporting Canfield's federal civil rights claim is sufficient to create a triable issue as to whether Flicker battered Canfield.  Accordingly, Flicker is not entitled to summary judgment on this claim.

          **e.**        **Violation of Bane Act by Defendants Demmers, Narvais, Maffucci, Mell, and Bentley**

Plaintiff Canfield claims that defendants Demmers, Narvais, Maffucci, Mell and Bentley violated California's Bane Act by attacking him.  Dckt. No. 1 ¶ 52.  County Defendants claim that Canfield has not established a violation of California's Bane Act because the force used by these defendants to subdue Canfield was not unreasonable.  Dckt. No. 32 at 21.  Viewing the evidence in the light most favorable to Canfield, however, there is adequate evidence to support a finding that these defendants violated Canfield's constitutional rights by using excessive force.

Canfield declares that during the November 17, 2008 incident, he "did not start to push past Narvais, and [he] did not resist or push back."  Dckt. No. 44 ¶ 4.  Nevertheless, he claims he was smashed to the ground, roughly handcuffed, and dragged by Narvais and Maffucci.  *Id.*  As for Demmers, Mell, and Bentley, Canfield declares that he did not resist during the November 23, 2008 altercation, and that Demmers, Mell, and another officer beat him, choked him, and threatened to kill him.  *Id.* at ¶ 23.  Canfield further declares that while he was down on his stomach, Bentley hit him with a closed fist.  *Id.*, 27.

Should a jury find Canfield credible and adopt his version of November 17, 2008 altercation, it could reasonably find that Canfield did not resist Narvais and Maffucci and that

there was little to no need for force.  Canfield's evidence – that he was not resisting when Narvais and Maffucci threw him to the ground, roughly handcuffed him, and dragged him – is sufficient to create a genuine dispute as to whether Narvais and Maffucci maliciously and sadistically used force in violation of the Eighth Amendment.

As for the November 23, 3008 altercation, Canfield's evidence shows that he was not resisting, that there was no need for force, and that Demmers, Mell, and Bentley each physically abused Canfield.  Based on Canfield's version of the incident, there appears to be no justification for Demmers, Mell, and Bently to use such force.  Under these circumstances, a reasonably jury could find that Demmers, Mell, and Bently maliciously and sadistically applied force for the very purpose of injuring Canfield.  Canfield has proffered sufficient evidence to create a genuine dispute as to whether his Eighth Amendment rights were violated by Demmers, Narvais, Maffucci, Mell, and Bentley.  Accordingly, summary judgment on Canfield's Bane Act claim against these defendants should be denied.

> **f.    Assault and Battery Claim Against Defendants Narvais and Maffucci**

Canfield asserts a cause of action for assault and battery against Narvais and Maffucci based on the November 17, 2008 incident.  County Defendants argue that Narvais and Maffucci are entitled to summary judgment because: 1) the force utilized was reasonable, and 2) Canfield failed to comply with the California Tort Claims Act ("GCA").[9]  As already discussed, there is a genuine dispute as to whether Narvais and Maffucci applied force maliciously and sadistically to harm Canfield.

As for County Defendants' second argument, the undersigned finds that Canfield failed to comply with the GCA.  The GCA requires that a party seeking to recover money damages from a

---

[9] In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of "California Tort Claims Act." *See City of Stockton v. Super. Ct.*, 42 Cal.4th 730, 741-42 (2007).

public entity or its employees submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 911.2, 945, 950.2; *see also Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208 (2007) ("Before suing a public entity, the plaintiff must present a timely written claim for damages to the entity."). "The purpose of the claims statutes is not to prevent surprise, but to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007) (internal quotation marks omitted).

Presentation of a timely claim is a condition precedent to maintaining an action against a public entity or its employees "and thus an element of the plaintiff's cause of action." *Shirk*, 42 Cal. 4th at 209. The written claim must include: 1) the name and address of the claimant, 2) the person to whom notice is to be sent, 3) the date, place, and other circumstances of the occurrence, 4) a general description of the injury and the loss incurred, and 5) the names of the person causing the injury, if known. Cal. Gov't Code § 910.

It is undisputed that Canfield did not present the County of Butte with a written notice of his claim regarding this incident. Dckt. No. 63, UMF 60. Canfield has failed to establish an element of his cause of action, and Narvais and Maffucci are therefore entitled to summary judgment on this claim.[10]

**g.       Assault and Battery Claim against Mell and Bentley**

Canfield claims that defendants Mell and Bentley are liable for assault and battery based on their conduct during the November 23, 2008 incident. County Defendants contend that they are entitled to summary judgment on this claim because there is no evidence that Mell and

---

[10] County Defendants also argue that to the extent Canfield intended his battery claim to be brought under § 1983, the claims should be dismissed for failure to exhaust. After reviewing the complaint, the undersigned finds that Canfield alleges only a state law cause of action for battery, not a federal civil rights claim. Accordingly, the undersigned does not address County Defendants' exhaustion argument.

1   Bentley acted maliciously or sadistically.  As previously discussed, there remains a genuine

2   dispute as to whether Mell and Bentley applied force maliciously and sadistically for the very

3   purpose of causing Canfield harm.  Thus, County Defendants are not entitled to summary

4   judgment on this claim.

5              **h.       Assault and Battery Claim Against Defendant Demmers**

6          Canfield alleges that he was assaulted and battered by defendant Demmers during the

7   November 23, 2008 altercation.  County Defendants argue that Demmers is entitled to summary

8   judgment on plaintiff's assault and battery claim because the evidence shows that the force

9   Demmers used was reasonable.  As explained above, there is sufficient evidence for a jury to find

10  that Demmers applied force maliciously and sadistically.  This same evidence is sufficient to

11  support a finding that Demmers battered Canfield.

12         Demmers further argues that he is entitled to summary judgment on Canfield's assault

13  claim because Canfield failed to comply with the GCA.  Although it is undisputed that Canfield

14  filed a written notice regarding the November 23, 2008 incident, County Defendants argue that it

15  did not include a sufficient description of the incident to include a claim for assault against

16  Demmers.  Specifically, County Defendants argue Canfield's failure to allege in his written notice

17  that Demmers threatened to kill him precludes Canfield from asserting an assault claim.

18         Compliance with the GCA requires a claimant to file a written notice that contains, among

19  other things, a description of the circumstances of the occurrence.  Cal. Gov't Code § 910.

20  "[W]hile the circumstances described in a claim must substantially correspond with the causes of

21  action pled, the claim need not conform to pleading standards."  *Shoemaker v. Myers*, 2 Cal. App.

22  4th 1407, 1426 (1992).  As previously mention, the purpose of the GCA is to provide a

23  government entity with "sufficient information to enable it to adequately investigate claims and to

24  settle them, if appropriate, without the expense of litigation."  *City of Stockton*, 42 Cal. 4th at 738.

25   Although Canfield did not specifically state in his written notice that Demmers threatened to kill

26  him, he did state that county employees, including Demmers, physically abused him and

threatened him.  Deems Decl., Exs. B, C.  This statement provided the County of Butte with

sufficient information to adequately investigate whether Demmers assaulted and battered

Canfield.  Thus, Canfield sufficiently described the circumstances of the occurrence in his written

claim.

As County Defendants advance no other arguments for summary judgment on this claim,

Canfield's assault and battery claim against Demmers should be tried on the merits.

## I.    <u>Assault and Battery by Unidentified Officers</u>

Canfield also alleges that he was battered by unidentified officers during the November

23, 2008 incident.  Dckt. No. 1 ¶ 59.  County Defendants argue that they are entitled to judgment

as a matter of law because: 1) there is no evidence of excessive force, and 2) Canfield failed to

comply with the GCA.

The unidentified officers are essentially Doe Defendants.  The use of Doe Defendants is

not favored in the Ninth Circuit.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

However, where the plaintiff will not know the alleged defendants' identities prior to filing the

complaint, "the plaintiff should be given an opportunity through discovery to identify the

unknown defendants . . . ."  *Id*.

On November 2, 2010, the undersigned issued an order holding that the parties may

conduct discovery until February 18, 2011.  Dckt. No. 9 at 4.  That order further held that any

motion to amend the complaint was to be filed by February 18, 2011.  *Id*.  Plaintiffs did not

attempt to amend their complaint.  Accordingly, all claims against unnamed deputies are

dismissed.

## j.    <u>Due Process Claims</u>

In a document titled "Memorandum of Points and Authorities in Opposition to Defendant

CFMG's Motion For Summary Judgment-Plaintiff Donald Nelson," plaintiffs claim that Canfield

"was segregated through an arbitrary decision without due process."  Dckt. No. 62 at 12.

Plaintiffs also argue that Simpson was "similarly segregated but for a short time only."  *Id*.

1   Plaintiffs argue that County Defendants' motion for summary judgment does not address their due

2   process claims.  *Id.*  After carefully reviewing the complaint, this court is unable to find a cause of

3   action alleging that any of the plaintiffs were denied due process or that County Defendants

4   violated their civil rights by segregating plaintiffs.  As the complaint does not contain claims for

5   segregating plaintiffs without due process, these claims are not properly before the court.  The

6   procedure for asserting a new claim is amending the complaint in accordance with Fed. R. Civ. P.

7   15(a).  As discussed above, the time for filing a motion to amend the complaint has lapsed.

8         **v.      Claims Against Defendants Butte County Sheriff's Department and
                   Jones**

9

10        County Defendants also move for summary judgment on plaintiffs' § 1983 claims against

11  the Butte County Sheriff's Department ("BCSD") and defendant Jones, arguing that these claims

12  are barred by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

13        In *Monell*, the Supreme Court held that municipalities may be held liable as "persons"

14  under 42 U.S.C. § 1983, but cautioned that they may not be held liable for the unconstitutional

15  acts of their employees solely on a respondeat superior theory.  436 U.S. at 691.  A municipal

16  entity or its departments, such as the BCSD, is liable under § 1983 if plaintiffs show that their

17  constitutional injuries were caused by employees acting pursuant to the municipality's policy or

18  custom.  *Ortez v. Wash. County*, 88F.3d 804, 811 (9th Cir. 1996).  Federal claims against

19  municipal defendants in their official capacities must also identify a government policy or

20  practice, because an official capacity suit against a municipal defendant in his official capacity is

21  nothing more than a suit against the county itself.  *McMillian v. Monroe County, Ala.*, 520 U.S.

22  781, 785 n. 2 (1997).  Thus, in order for plaintiffs to proceed on claims against municipal

23  defendants, including their claims against Jones in his official capacity, plaintiff must show that

24  defendants' specific policies and practices were the moving forces behind the alleged violations

25  of plaintiffs' constitutional rights.  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1185–86,

26  1193–94 (9th Cir. 2002).  This can be achieved by showing that plaintiffs' constitutional rights

were violated as a "result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents.").

///

In the absence of a longstanding practice or custom, plaintiffs can establish municipal liability in two ways. First, by showing "that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Gillette v. Delmore*, 979 F.2d 1346 (9th Cir. 1992). Second, plaintiffs "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. 1346-47. "Whether a particular official has final policy-making authority is a question of state law." *Id*. at 1346.

It is undisputed that BCSD has a formal written policy prohibiting the use of excessive force. Flicker Decl., Ex. B. Plaintiffs argue, however, that the formal written policy was not followed and that the use of excessive force by BCSD employees was so widespread that it constituted a well-established policy.[11]  As discussed above, the record contains evidence that would support a finding that deputies working for the BCSD used excessive force against plaintiffs on multiple occasions. Whether a jury will credit plaintiffs' evidence remains to be seen, but if it does there is sufficient evidence to support a finding that officers used excessive force in arresting Simpson on August 21, 2008. Dckt. No. 46 ¶ 4. Thus, there is a triable issue of

_____

[11]  Plaintiffs request this court take judicial notice of declarations and exhibits filed in a different action. Dckt. Nos. 41, 68. The documents plaintiffs request this court to consider are submitted to support their position that there was a policy and practice at BCJ which resulted in violations of their constitutional rights. A court may take judicial notice of a fact that is not reasonably subject to dispute where the fact is either generally known within the court's geographical jurisdiction or from a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. The statements contained in the declarations and exhibits are not generally known and the facts are not from sources whose accuracy cannot be reasonably questioned. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.5 (9th Cir. 2008). Accordingly, plaintiffs' requests for judicial notice are denied.

1  fact on the question.  Plaintiffs have also created a genuine dispute as to whether Flicker used

2  excessive force against Canfield on January 6, 2009.  The record also contains evidence that

3  Canfield was subjected to excessive force by BCJ staff on November 17, 2008, and November 23,

4  2008.

5      Plaintiffs also proffer evidence that BCSD employees used excessive force against other

6  individuals.  Plaintiffs submit the declaration of Travis Tippetts ("Tippetts Decl."), who declares

7  that he was battered by a BCSD deputy on July 4, 2008.  Dckt. No. 48 ¶ 1.  Tippetts states that

8  while he was standing in front of a door, an officer came up behind him and smashed his face into

9  the door jam.  *Id*.  He further declares that "[w]hile at [BCJ] I observed a number of acts of

10  brutality against inmates perpetrated by the guards."  *Id*. at ¶ 2.  Although not described in detail,

11  Nelson also declares that he witnessed correctional staff physically abusing inmates.  Dckt. No.

12  37 ¶ 17.

13      Plaintiffs' evidence is sufficient to support a finding that BCSD employees used excessive

14  force on a number of occasions between July 4, 2008, and January 6, 2009.  The undersigned

15  cannot find as a matter of law that this evidence is insufficient to show that BCSD maintained a

16  widespread practice of using excessive force.  Because a jury could conclude that plaintiffs were

17  subjected to excessive force pursuant to an informal policy, plaintiffs claims against the BCSD

18  and Jones should be adjudicated on their merits.

19      Plaintiffs also contend that BCSD has a longstanding practice of denying inmates medical

20  care.  Plaintiffs have submitted evidence that shows that BCSD staff intentionally interfered with

21  medical treatment by taking away Brewer's wheelchair and Canfield's crutches.  Dckt. No. 39 ¶

22  2; Dckt. No. ¶ 2.[12]  However, these two incidents are insufficient to establish that BCSD

23  maintained a longstanding practice of acting with deliberate indifference to an inmate's serious

24

25  _____

   [12]  Plaintiffs also rely on the declaration of James Mathews, an individuals who was once an
   inmate at BCJ.  Dckt. No. 49-3.  Mathews declaration, however, does not contain any statement that
26  are sufficient to create a genuine issue as to whether BCSD employees acted with deliberate
   indifference to Mathews's serious medical needs.

1   medical need.  *See Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1998) (two

2   incidents of unconstitutional activity insufficient to support a finding of municipal liability.)

3       Plaintiffs further argue that their § 1983 claims against BCSD and Jones are not barred by

4   *Monell* because Flicker committed constitutional violations and had final policy-making

5   authority.  Dckt. No. 49 at 5.  Even assuming that Flicker had final policy-making authority,

6   plaintiffs have submitted no evidence that Flicker acted with deliberate indifference to their

7   serious medical needs.  The only claim against Flicker for denial of medical care is Brewer's

8   claim that Flicker acted with deliberate indifference by not referring him to a hand specialist.  As

9   explained above, there is insufficient evidence to support Brewer's Eighth Amendment claim

10  against Flicker for deliberate indifference to his serious medical need.  Accordingly, plaintiffs

11  have failed to show that an official with final policy-making authority violated their federally

12  protected constitutional rights by denying them medical care.

13      Lastly, plaintiffs argue that there is adequate evidence to show that Jones, as the jail

14  commander, had final policy-making authority and ratified the unconstitutional conduct of the

15  staff he supervised.  Dckt. No. 49 at 5.  The record, however, contains no evidence indicating that

16  Jones ratified a subordinate's decision to act with deliberate indifference to an inmate's serious

17  medical need.  Thus, plaintiffs have failed to establish municipal liability for deliberate

18  indifference to their serious medical needs based on a policy maker's ratification of

19  unconstitutional conduct.

20          **vi.    Plaintiffs' Breach of Contract Claim**

21      Plaintiffs' twelfth cause of action is a state law claim for breach of contract against

22  County Defendants.  Plaintiffs assert that BCSD breached a contract that the County of Butte

23  entered into with CFMG, which required CFMG to be the exclusive provider of medical and

24  dental needs for inmates housed at BCJ.  Dckt. No. 1 ¶ 76.  Plaintiffs contend that BCSD

25  breached this contract, presumably by interfering with medical treatment.  County Defendants

26  argue that plaintiffs may not seek enforcement of the claim because they are not intended third-

1   party beneficiaries.  Dckt. No. 32 at 24.

2          Under California law, "[a] third party beneficiary may enforce a contract made for its

3   benefit."  *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524 (2002).  However, "[a] third party should

4   not be permitted to enforce covenants made not for his benefit, but rather for others.  He is not a

5   contracting party; his right to performance is predicated on the contracting parties' intent to

6   benefit him . . . ." *Jones v. Aetna Casualty & Surety Co.*, 26 Cal. App. 4th 1717, 1724 (1994).

7   "The circumstance that a literal contract interpretation would result in a benefit to the third party

8   is not enough to entitle that party to demand enforcement. The contracting parties must have

9   intended to confer a benefit on the third party." *Neverkovec v. Fredericks*, 74 Cal. App. 4th 337,

10  348–49 (1999).  When interpreting a written contract, if possible a court is to ascertain the

11  intentions of the parties from the writing alone.  Cal. Civ. Code. § 1639.

12         The contract between the County of Butte and CFMG did not intend plaintiffs to be third

13  party beneficiaries.  The fact that plaintiffs, as inmates at BCJ, received medical care from CFMG

14  is not sufficient to permit them to enforce the contract.  The contract specifically states:

15             the parties agree that they have not entered into this Agreement for the benefit of
               any third person or persons, and it is their express intention that the Agreement is
16             intended to be for their respective benefit only and not for the benefit of others
               who might otherwise be deemed to constitute third-party beneficiaries hereof.

17

18  Dckt. No. 18, Ex. C at 13.

19         The language in the contract could not be more clear.  The contract was made for the

20  benefit of the County of Butte and CFMG, and any benefit plaintiffs received was unintended.

21  Since plaintiffs were not intended third party beneficiaries, they may not seek enforcement of

22  the contract.  Accordingly, County Defendants are entitled to summary judgment on this

23  claim.[13]

24

_____

25         [13] Plaintiffs' fourteenth cause of action is a state law breach of contract claim against CFMG,
    involving the same contract.  CFMG did not move for summary judgment on this claim, but this
26  claim fails for the same reason as plaintiffs' breach of contract claim against County Defendants-

36

1              vii.    **Plaintiffs' Consent Decree Claim**

2         Plaintiffs' thirteenth cause of action is a state law breach of contract claim against County

3    Defendants for violating a Consent Decree.  County Defendants argue that this cause of action

4    should be dismissed because the California Superior Court in and for the County of Butte

5    ("Superior Court") has exclusive jurisdiction over the matter.

6         "The parties to a consent decree expect and achieve a continuing basis of jurisdiction to

7    enforce the terms of the resolution of their case in the court entering the order."  *Wyatt v. County*

8    *of Butte*, No. 2:06-CV-1003 GEB-JFM, 2007 WL 3340947, * 6 (2007) (quoting *Smyth ex re.*

9    *Smyth v. Rivero*, 282 F.3d 268, 279-80 (4th Cir. 2002)).  Where a case requires the interpretation

10   or interference of a consent decree, the case should be heard before the court retaining

11   jurisdiction for enforcing the decree.  *Goulart v. United Airlines, Inc.*, 1994 WL 544476 (N.D.

12   Cal. Sept. 28, 1994).

13        Here, the Consent Decree establishes jurisdiction with the California Superior Court,

14   County of Butte.  Dckt. No. 18, Ex. D at 23 ("The Enforcement of this Decree may be sought by

15   any party or by the Coordinator . . . enforcement issues will be heard and decided by the

16   Superior Court, County of Butte.").  However, the Consent Decree states that "[b]ecause of the

17   nature of the relief sought, the Court shall retain jurisdiction herein until June 30, 2007, unless

18   extended by Court and by and between the parties hereto.  Consequently, parties do hereby

19   recognize and submit to the continuing jurisdiction of the Court for the period stated." *Id*. at 5.

20   The parties to the Consent Decree stipulated to the extension of the agreement through June 30,

21   2009.  *Id*. at 1-2.

22        Plaintiffs filed this action in October 2009.  Dckt. No. 1.  Pursuant to the stipulation, the

23   Superior Court no longer maintained continuing jurisdiction after June 30, 2009.  County

24   Defendants have provided no evidence of a subsequent stipulation or an order by the Superior

25   _____

26   plaintiff is not a third-party beneficiary entitled to enforce the contract.

1  Court extending the period for continuing jurisdiction.  County Defendants have failed to

2  establish that the Superior Court retains continuing jurisdiction over the enforcement of the

3  Consent Decree.  As County Defendants put forth no other argument, summary judgment on this

4  claim should be denied.

5       **B.    CFMG's Motions for Summary Judgment against Plaintiff Simpson**

6       Plaintiff Simpson claims defendant CFMG was deliberately indifferent to his serious

7  medical needs by failing to treat his injuries.  Simpson further claims that CFMG was

8  professionally negligent in providing medical care.

9       **I.    Deliberate Indifference to a Serious Medical Need**

10      Plaintiff Simpson claims that defendant CFMG was deliberately indifferent to his serious

11  medical needs by failing to adequately treat injuries to his head, hand, and tooth, and by failing

12  to assess his mental health.

13      As previously stated, a prison official violates the Eighth Amendment's proscription of

14  cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized

15  measure of life's necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*,

16  511 U.S. 825, 834 (1994).  To prevail, plaintiff must show both that his medical needs were

17  objectively serious, and that defendant possessed a sufficiently culpable state of mind.  *Wilson v.*

18  *Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).

19  A serious medical need is one that significantly affects an individual's daily activities, an injury

20  or condition a reasonable doctor or patient would find worthy of comment or treatment, or the

21  existence of chronic and substantial pain.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60

22  (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th

23  Cir.1997) (*en banc*).

24      Deliberate indifference may be shown by the denial, delay or intentional interference with

25  medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*,

26  838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

As for Simpson's claim that CFMG failed to adequately treat his head injury, CFMG argues that there is no admissible evidence that plaintiff suffered brain damage or other serious head trauma. CFMG's Mot. Summ. J. against Pl. Simpson, P. & A. In Supp. Thereof (Dckt. No. 10-2) at 3. In Simpson's declaration, he states that in August 2008, he was beaten by arresting officers and subsequently taken to the hospital.[14] Dckt. No. 46 ¶ 6. Simpson also declares that "[s]ince I was beaten by the deputies in August, 2008, I have had memory losses, an inability to

---

[14] In his declaration, Simpson provides numerous medical opinions. Simpson, however, has not provided any evidence that he is qualified to provide an expert opinion. To the extent that Simpson cites to inadmissible evidence to establish a genuine issue of material fact, this evidence was not considered by the court.

1    concentrate, headaches, difficulty sleeping, and a great deal of fear." *Id.* at ¶ 10.  Based on this

2    evidence, a jury could reasonably conclude that Simpson sustained a head injury worthy of

3    medical treatment.   Thus, Simpson has established a genuine issue as to whether he suffered a

4    serious injury.

5          CFMG also contends that there is no evidence that CFMG acted with the requisite

6    deliberate indifference in treating Simpson's head injury.  In support of its motion, CFMG

7    submits the declaration of Dr. John Levin.  Dckt. No. 11.  Dr. Levin declares that he is a medical

8    doctor, has been licensed to practice medicine in California since January 1, 1976, and is board

9    certified in Emergency Medicine.  *Id.* at 1.  He is a member of the Emergency Medicine

10   Committee at Arcadia Methodist Hospital and also a member of the Paramedic/Liaison Advisory

11   Committee.  *Id.* at ¶¶ 1-2.  Dr. Levin is familiar with the care and treatment of patients

12   experiencing "pain and discomfort in the head, face and extremities reportedly related to prior

13   trauma and the potential for neurologic sequellae related to such trauma." *Id.* at ¶ 2.  Dr. Levin

14   declares that he has reviewed Simpson's medical records and that Simpson was diagnosed with a

15   minor head contusion.  *Id.* at ¶¶ 2,4.  He further declares that plaintiff's complaints of head pain

16   were appropriately treated with pain medication.  *Id.* at ¶ 4.  Dr. Levin also states that the care

17   provided to Simpson at BCJ "was appropriate and within the applicable standard of care." *Id.* at

18   ¶ 5.

19         Simpson contends, however, that CFMG acted with deliberate indifference because

20   Simpson should have been referred to a neurologist rather than prescribed pain medications.

21   Dckt. No. 46 ¶ 10.  However, evidence that Simpson wanted a certain type of medical care does

22   not show that the medical care provided was unreasonable under the circumstance or chosen in

23   conscious disregard of an excessive risk to his safety.  Simpson's opinion as to what constitutes

24   proper medical care is insufficient to create a triable issue. *Estelle*, 429 U.S. at 106.

25         Simpson also contends that CFMG was deliberately indifferent in treating his hand injury

26   because CFMG prescribed him pain medication, but did not conduct other diagnostic studies.

40

1   Simpson's Opp'n to CFMG's Mot. Summ. J. (Dckt. No. 57) at 6.  In *Estelle*, the plaintiff

2   contended that defendants should have utilized more diagnostic techniques, including using X-

3   rays, in attempting to diagnose the plaintiff's injury.  *Estelle*, 429 U.S. at 107.  The court noted

4   that the decision of whether to order X-rays is a classic example of a matter of medical judgment.

5   *Id*.  The court held that "[a] medical decision not to order an X-ray, or like measures, does not

6   represent cruel and unusual punishment."  *Id*.

7           Here, there is no evidence that CFMG's decision to prescribe pain relief for Simpson's

8   hand injury was medically unacceptable under the circumstances.  Simpson has only provided

9   evidence that he disagreed with the medical treatment provided.  However, Simpson's

10  disagreement with CFMG's treatment of his hand is insufficient to establish a genuine dispute for

11  trial.  *See Estelle*, 429 U.S. at 106.

12          Simpson also asserts that CFMG acted with deliberate indifference in providing him

13  dental care.  Dckt. No. 57 at 3.  Simpson declares that his teeth were damaged during his arrest.

14  Dckt. No. 46 ¶ 8.  He was evaluated by a dentist who recommended pulling one of his teeth.  *Id*.

15  Simpson wished to have the tooth repaired, rather than extracted, and the extraction procedure

16  was not performed.[15]  *Id*.   Simpson claims, without citing any evidence, that extraction of a

17  damaged tooth is not within the current standard of dental care.  Dckt. No. 57 at 3.

18          Simpson claims that the evidence supports his contention that CFMG acted with deliberate

19  indifference.  *Id*.  The evidence, however, only shows that plaintiff disagreed with CFMG as to

20  what was or was not proper dental care.  It does not establish that extraction of his damaged tooth

21  would have been inappropriate under the circumstances.  Again, Simpson's disagreement with the

22  reasonableness of the care recommended by CFMG does not create a triable issue.  *See Estelle*,

23  429 U.S. at 106.

24

25          [15] CFMG contends Simpson declined the tooth extraction half way through the extraction
    procedure.  Dckt. No. 10-2, UMF. No. 9.  Simpson argues that the procedure never occurred.  Dckt.
26  No. 46 ¶ 8.  It is immaterial, however, whether a dentist commenced a tooth extraction procedure.

1    Simpson also contends CFMG was deliberately indifferent to his medical needs by not

2    timely providing medical treatment.  Dckt. No. 57 at 4.  "Prison officials are deliberately

3    indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere

4    with medical treatment."  *Jackson*, 90 F.3d at 332 (quoting *Hamilton v. Endell*, 981 F.2d 1062,

5    1066 (9th Cir. 1992)).  "However, the officials' conduct must constitute unnecessary and wanton

6    infliction of pain before it violates the Eighth Amendment."  *Hallett v. Morgan*, 296 F.3d 732,

7    744 (9th Cir. 2002).

8    Simpson complained to CFMG that his head and hand hurt on October 13, 2009.  Dckt.

9    No. 57 at 4 (citing Dckt. No. 10-2, UMF No. 3).  On the same day, he also complained that his

10   teeth were broken.  *Id*. (citing Dckt. No. 10-2, UMF No. 3).  However, it was not until October

11   21, 2008, eight days after he complained of pain, that CFMG evaluated Simpson and prescribed

12   ibuprofen.  *Id*. (citing Dckt. No. 10-2, UMF No. 4).  The evidence shows that CFMG required

13   Simpson to wait eight days after his complaints of pain before providing him any medical

14   attention.  Whether this delay amounted to an unnecessary and wanton infliction of pain is a

15   question that must be decided by a jury.  *See McGuckin*, 974 F.2d at 1061-62.  There is a genuine

16   dispute as to whether CFMG acted with deliberate indifference by not promptly providing

17   Simpson medical care.

18   Lastly, Simpson contends that CFMG was deliberately indifferent to his serious medical

19   need by failing to assess his mental health.  Dckt. No. 57 at 3.  Plaintiff Simpson declares that the

20   beating by arresting officers caused him emotional distress and that he was not provided

21   counseling at BCJ.  Dckt. No. 46 ¶ 13.  After a thorough review of the record, the court is unable

22   to find any evidence that Simpson notified CFMG, jail staff, or any medical personnel that he was

23   suffering from emotional distress.  A prison official is deliberately indifferent "only if he knows

24   that inmates face a substantial risk of serious harm and disregards that risk by failing to take

25   reasonable measure to abate it."  *Farmer* 511 U.S. at 847.  Simpson has provided no evidence that

26   CFMG knew he was emotionally distressed as a result of his arrest and therefore has failed to

42

1    establish a genuine issue as to whether CFMG was deliberately indifferent by not providing a

2    mental health assessment.

3           In sum, there is no evidence that CFMG was deliberately indifferent in treating Simpson's

4    head and hand injuries with pain medication, declining to repair his damaged tooth, and failing to

5    assess his mental health.  There is, however, a triable issue as to whether CFMG acted with

6    deliberate indifference in delaying evaluation of Simpson's injuries for eight days.  Because a

7    triable issue remains as to whether CFMG was deliberately indifferent to Simpson's serious

8    medical needs, CFMG's motion for summary judgment should be denied as to this claim.

9                          **ii.     Medical Malpractice**

10          Plaintiff Simpson claims that defendant CFMG was professionally negligent in providing

11   him medical care.  Under California law, to succeed on a medical malpractice claim a plaintiff

12   must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other

13   members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a

14   proximate causal connection between the negligent conduct and the resulting injury; and (4)

15   actual loss or damage resulting from the professional's negligence."  *Hanson v. Grode*, 76 Cal.

16   App. 4th 601, 606 (1999) (quoting *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)).  "The standard of

17   care in a medical malpractice case requires that medical service providers exercise that . . . degree

18   of skill, knowledge and care ordinarily possessed and exercised by members of their profession

19   under similar circumstances." *Barris v. County of Los Angeles*, 20 Cal. 4th 101, 108 n.1 (1999).

20   Except where the type of conduct required by the particular circumstances is within the common

21   knowledge of laymen, the standard of care can only be proven by expert testimony.  *Hutchinson

22   v. U.S.*, 838 F.2d 390, 392 (9th Cir. 1988).  Thus, "[w]hen a defendant moves for summary

23   judgment and supports his motion with expert declarations that his conduct fell within the

24   community standard of care, he is entitled to summary judgment unless the plaintiff comes

25   forward with conflicting expert evidence."  *Id*. at 392-93.

26   ////

1    In support of its motion, CFMG submits the declaration of Dr. John Levin.  Dckt. No.

2    11.  Dr. Levin declares that he has reviewed Simpson's medical records and that it is his expert

3    opinion that Simpson did not sustain brain damage and that pain medication was appropriately

4    prescribed for Simpson's injuries.  *Id*. at ¶¶ 2, 4.  He further states that the care provided to

5    Simpson at BCJ "was appropriate and within the applicable standard of care."  *Id*. at ¶ 5.

6    Simpson has failed to produce any expert testimony contradicting Dr. Levin's expert

7    opinion.  He provides only his personal conclusion that CFMG failed to meet the applicable

8    standard of care.  Thus, there is no genuine issue that medical treatment provided by CFMG

9    amounted to professional negligence.

10    Simpson also alleges that CFMG was professionally negligent in providing dental care.

11    Specifically, he asserts that CFMG's recommendation to extract his tooth, rather than repair it,

12    constituted malpractice.  Dckt. No. 57 at 3.  To succeed on his claim, Simpson is required to

13    establish through expert testimony that the dental treatment provided by CFMG fell below the

14    applicable standard of care.  Simpson provides no expert testimony and therefore fails to

15    establish an element essential to his claim.  *See Johnson v. Vo*, No. 07-574-PHX-ROS, 2009

16    WL 840398, at *3 (E.D. Cal. Mar. 30, 2009) (defendant entitled to summary judgment on

17    plaintiff's malpractice claim where plaintiff failed to produce expert evidence.).  Accordingly,

18    CFMG is entitled to summary judgment on Simpson's claim that CFMG was professionally

19    negligent in providing dental care.

20    **C.    CFMG's Motion for Summary Judgment against Plaintiff Brewer**

21    Plaintiff Brewer claims that defendant CFMG violated his rights under the Eighth

22    Amendment because CFMG was deliberately indifferent to his serious medical need.  He

23    further contends that the treatment provided by CFMG constituted medical malpractice.

24    **I.    Deliberate Indifference to a Serious Medical Need**

25    Plaintiff Brewer claims that defendant CFMG was deliberately indifferent to his serious

26    medical need by failing to provide prompt treatment to his fractured heel.  Pl. Brewer's Opp'n to

1   CFMG's Mot. Summ. J. (Dckt. No. 55) at 2-3.  "Prison officials are deliberately indifferent to a

2   prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical

3   treatment."  *Jackson*, 90 F.3d at 332 (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.

4   1992)).  Mere delay in medical treatment must lead to further injury to amount to deliberate

5   indifference.  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

6       CFMG contends that there is no evidence showing that CFMG was deliberately indifferent

7   to Brewer's medical needs.  CFMG's Mot. Summ. J. against Pl. Brewer, P & A in Supp. Thereof

8   (Dckt. No. 17-1) at 8.  It is undisputed that prior to his arrival at BCJ, Brewer was treated at the

9   Enloe Medical Center ("Enloe") for a fractured heel.  Pl. Brewer's Resp. to CFMG's Stmt. of

10  Undisputed Facts (Dckt. No. 66), UMF No. 2.  Brewer declares that he was told by doctors that he

11  needed to return to Enloe to have surgery on his leg, and he conveyed this information to CFMG.

12  Brewer Decl. (Dckt. No. 39) ¶ 4.  Brewer arrived at BCJ on August 29, 2008 with a cast on his

13  injured leg.  Dckt. No. 66, UMF No. 5.  On September 3, 2008, CFMG ordered a follow up

14  orthopedic appointment.  *Id.*, UMF No. 6.  An appointment at Enloe Orthopedic Clinic was

15  scheduled for November 17, 2008.  *Id.*, UMF No. 11.  Brewer was not informed that an

16  appointment was scheduled, and he did not attend an appointment at Enloe Orthopedic Center on

17  November 17, 2008.  Dckt. No. 39 ¶ 7.  In December 2008, Brewer was seen by an orthopedist at

18  Enloe.  Dckt. No. 66, UMF No. 12.  X-rays showed that Brewer's fracture had not yet healed and

19  that he would require an additional four weeks in his cast.  *Id.*  Brewer contends that his doctor

20  asked him "why it took so long to come back" to Enloe and informed him that surgery on his leg

21  could no longer be performed "so [he] could walk right again."  Dckt. No. 39 ¶ 5.

22      CFMG argues that it is entitled to summary judgment because there is no admissible

23  evidence that it was deliberately indifferent in providing Brewer medical care.  Dckt. No. 17-1

24  at 7-8.  CFMG objects to portions of Brewer's declaration, arguing that several of Brewer's

25  statements constitute inadmissible hearsay.  Def. CFMG's Objections to Pl. Brewer's Decl.

26  (Dckt. No. 59) at 2-3.  Specifically, CFMG contends that the statements made by the treating

1    physician that Brewer needed surgery and that surgery was no longer an option because of the

2    delay in returning to Enloe are inadmissible.[16]  *Id.*  CFMG claims that without these

3    inadmissible statements, there is insufficient evidence to establish deliberate indifference.

4          At the summary judgment stage, a court does not focus on whether the form of the

5    evidence is admissible.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-38 (9th Cir. 2003).  The issue

6    is whether the contents of the evidence is admissible.  *Id.*  Although Brewer could not testify as

7    to the statements made by his treating physician at trial, he would be permitted to call his

8    physician as a witness.  The treating physician could testify that Brewer needed surgery and

9    that delay in seeking this treatment foreclosed it as a treatment option, causing plaintiff to lose

10   the ability to walk properly.  Thus, the contents of Brewer's declaration would be admissible at

11   trial and may therefore be considered in deciding CFMG's motion for summary judgment.

12         Brewer's evidence, however, does not establish that CFMG was deliberately indifferent

13   to his serious medical needs.  CFMG ordered an orthopedic follow up on September 3, 2008,

14   and an appointment was scheduled for November 17, 2008.  There is no evidence that CFMG

15   intentionally withheld the appointment date from Brewer, or that CFMG took actions to ensure

16   he missed his appointment.  At most, the evidence establishes that Brewer sustained further

17   injury because CFMG was negligent in failing to inform plaintiff that he had an appointment at

18   the Enloe Orthopedic Clinic.  Evidence that CFMG inadvertently failed to provide proper

19   medical care is insufficient to show that CFMG acted with deliberate indifference.  *See Estelle*,

20   429 U.S. at 105-106.  Accordingly, CFMG is entitled to summary judgment on Brewer's

21   Eighth Amendment claim.

22   ////

23   ////

24

25         [16] CFMG also contends that various statements in plaintiff Brewer's declaration  constitute
     improper medical testimony.  To the extent that plaintiff Brewer's declaration contains medical
26   opinion testimony, such statements were not considered by the court.

## ii.    Medical Malpractice

CFMG contends that it is entitled to summary judgment on Brewer's malpractice claim because the evidence presented shows that the treatment provided was within the applicable standard of care and that Brewer has failed to supply any evidence to the contrary.  Dckt. No. 17-1 at 7-8.  CFMG submits the declaration of Dr. John Levin in support of its motion.  Dckt. No. 20.  Dr. Levin is familiar with the care and has been involved in the treatment of patients that sustained traumatic injuries, including fractures of lower extremities and calcaneal fractures.  *Id*. at ¶ 2.  He declares that he has reviewed Brewer's medical records concerning his treatment at BCJ, and it is his opinion that the care and treatment CFMG provided Brewer met the applicable standard of care.  *Id*. at ¶¶ 7, 9.  Dr. Levin specifically states that the type of injury Brewer sustained is slow to heal and that a cast and no weight bearing order was appropriate treatment.  *Id*. at ¶¶ 7, 9.

Brewer has not supplied any expert evidence that CFMG's medical treatment failed to meet the applicable standard of care.  Thus, CFMG is entitled to summary judgment on Brewer's medical malpractice claim.

## D.    CFMG's Motion for Summary Judgment against Plaintiff Nelson

Plaintiff Nelson asserts an Eighth Amendment claim and medical malpractice claim against defendant CFMG.  CFMG moves for summary judgment on both claims.

## I.    Eighth Amendment Claim

Plaintiff Nelson claims that defendant CFMG acted with deliberate indifference by failing to provide him with medication needed to treat his mental condition.  Pl. Nelson's Opp'n to Def. CFMG's Mot. Summ. J. (Dckt. No. 61) at 2.  Nelson asserts that CFMG should have continued to provide him Seroquel and that prescribing Thorazine and Elavil was inappropriate. *Id*. at 3.  "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's

1  health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (internal quotations marks
2  omitted).

3       CFMG submits the declaration of Dr. Levin to support its argument that CFMG did not
4  act with deliberate indifference in providing Nelson medical care. Dckt. No. 29. In addition to
5  his experience with emergency medicine, Dr. Levin declares that he has been involved in the
6  treatment of patients taking Elavil, Seroquel and other psychotropic medication. Dckt. No. 29 ¶
7  2. Dr. Levin states that it is his opinion that discontinuance of Seroquel was appropriate given
8  Nelson's admission that he had previously obtained this drug without a prescription.

9       Nelson provides no admissible evidence that the medications provided were
10 inappropriate.[17] He simply contends that he should have continued to be prescribed Seroquel.
11 However, evidence that Nelson wanted a different treatment does not indicate that the treatment
12 actually provided was unreasonable. His opinion as to what constitutes proper medical
13 treatment is not sufficient to create a triable issue. *Estella*, 429 U.S. at 106.

14      Nelson also contends that Dr. Baker acted with deliberate indifference by discontinuing
15 the Zyprexa prescribed by Dr. Uppal at the Oroville Hospital. Dr. Baker's decision to
16 discontinue Zyprexa shows that he disagreed with Dr. Uppal on what treatment was appropriate
17 for Nelson. However, a difference in opinion between physicians as to the appropriate course
18 of treatment does not establish an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d
19 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Nelson has
20 provided no evidence that suspending Nelson's Zyprexa prescription was inappropriate under
21 the circumstances.

22 ////
23 ////
24

25    [17] Nelson's declaration is replete with medical opinion testimony relating to the medication
26 he was prescribed. Because there is no evidence that Nelson is qualified to opine on the appropriateness of the medical treatment provided, this evidence was not considered by the court.

1     Nelson further argues that he was not provided medication upon his arrival at BCJ, and

2     he did not receive medication until five days after he submitted a grievance.[18]  To establish that

3     a prison official acted with deliberate indifference by delaying medical treatment, the plaintiff

4     must show that the delay led to further injury.  *Shapley*, 766 F.2d at 407.  Although Nelson

5     proffers evidence that no treatment was provided for five days, the record is devoid of any

6     evidence that this delay caused him further injury.

7     In sum, Nelson has failed to submit evidence that the treatment provided was

8     inappropriate or unreasonable and that he suffered further injury on account of any delay in

9     receiving treatment.  Viewing the evidence in the light most favorable to Nelson, no jury could

10    reasonably conclude that CFMG was deliberately indifferent to Nelson's medical needs.

11    Accordingly, CFMG is entitled to summary judgment on Nelson's Eighth Amendment claim.

12              **ii.     Medical Malpractice**

13    Plaintiff Nelson claims that defendant CFMG was professionally negligent in providing

14    him medical treatment.  CFMG relies on the declaration of Dr. Levin to support its argument that

15    there is no evidence of medical malpractice.  Dckt No. 29.  He declares that he has reviewed the

16    medical records pertaining to the care provided to Nelson and that the medical care provided by

17    CFMG was within the applicable standard of care.  *Id*. at ¶¶ 3, 6, 8.

18    Nelson has provided no expert evidence to contradict Dr. Levin's declaration.  He

19    therefore has failed to show that a genuine issue exists as to whether the medical care provided

20    by CFMG fell below the applicable standard of care.  CFMG is entitled to summary judgment on

21    this claim.

22    ////

23

24

25

[18]    It is unclear from Nelson's declaration whether he claims he did not receive any medication until five days after filing his grievance, or whether he did not receive the medication he believed was appropriate.  Construing plaintiff Nelson's declaration in the light most favorable to him, this court finds that Nelson claims he was provided no medication.

26

1        **E.        Plaintiff Canfield's claims against CFMG**

2        In the compliant, plaintiff Canfield asserts claims against defendant CFMG for violation

3   of the Eighth Amendment and medical malpractice.  CFMG has moved for summary judgment

4   on all claims, with the exception of the two asserted against Canfield.  Thus, these claims may

5   proceed to trial.

6   **IV.    Conclusion**

7        Accordingly, it is hereby ORDERED that the Clerk of the Court randomly assign a

8   United States District Judge to this case.

9        Further, it is hereby RECOMMENDED that:

10        1. County Defendants' motion for summary judgment, Dckt. No. 14, be granted in part

11  and denied in part as follows:

12              a.  GRANTED as to (a) plaintiff Simpson's § 1983 excessive force, assault and

13  battery, Bane Act, and intentional infliction of emotional distress claims against defendants

14  McNulty and Paley; (b) plaintiff Brewer's § 1983 Eighth Amendment claims against defendants

15  Flicker and Hovey; (c) plaintiff Canfield's assault and battery claims against defendants Narvais,

16  Maffucci, and unidentified officers; and (d) plaintiffs' breach of contract claim against County

17  Defendants, and that plaintiff Nelson's § 1983 claim against County Defendants and plaintiff

18  Brewer's § 1983 Eighth Amendment claims against defendants Morehead and Stockwell, be

19  dismissed without prejudice as unexhausted, and

20              b.  DENIED as to (a) plaintiff Simpson's § 1983 excessive force, assault and

21  battery, and intentional infliction of emotional distress claims against defendant Deal; (b)

22  plaintiff Canfield's § 1983 Eighth Amendment claim for taking Canfield's crutches against

23  County Defendants; (c) plaintiff Canfield's § 1983 Eighth Amendment excessive force, Bane

24  Act, and assault and battery claims against defendant Flicker; (e) plaintiff Canfield's Bane Act

25  claim against defendants Demmers, Narvais, Maffucci, Mell, and Bentley; (f) plaintiff Canfield's

26  assault and battery claims against Mell, Bentley, and Demmers; (e) plaintiffs' Eighth

50

1   Amendment claims against the Butte County Sheriff's Department and defendant Jones in his

2   official capacity; and (f) plaintiffs' claim for violation of the consent decree against County

3   Defendants.

4       2.  CFMG's motion for summary judgment against plaintiff Simpson, Dckt. No. 10, be

5   DENIED as to plaintiff Simpson's § 1983 Eighth Amendment claim based on the eight-day

6   delay in providing medical care, and GRANTED in all other respects.

7       3.  CFMG's motion for summary judgment against plaintiff Brewer, Dckt. No. 17, be

8   GRANTED.

9       4.  CFMG's motion for summary judgment against plaintiff Nelson, Dckt. No. 27, be

10  GRANTED.

11      These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

16  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

17  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

18  Dated:  March 9, 2012.

19

20                          EDMUND F. BRENNAN
                            UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26